FITCH, P. J., and BARNES, J., concur.

## Maggie Barnes, Plaintiff in Error, v. City of Chicago, Defendant in Error.

### Gen. No. 29,437.

MUNICIPAL CORPORATIONS—*killing of police officer by riotous mob as "lynching."* A police officer who, while in the discharge of his official duties, was shot while endeavoring to stop a riotous mob, and died as a result was not "lynched" within the meaning of section 5 of the "Act to suppress mob violence," in force July 1, 1905, Cahill's St. ch. 38, ¶ 541, and hence a verdict for the defendant city was properly directed in an action by the mother of the officer.

Error by plaintiff to the Municipal Court of Chicago; the Hon. FRANKLIN J. STRANSKY, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1924. Affirmed. Opinion filed June 17, 1925.

E. H. MORRIS and ALVA L. BATES, for plaintiff in error.

FRANCIS X. BUSCH, Corporation Counsel, for defendant in error; CORA B. HIRTZEL, Asst. Corporation Counsel, of counsel.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action against the defendant, claiming that her son, John W. Simpson, had been

killed by a mob and, therefore, she was entitled to recover by virtue of the provisions of "An Act to suppress mob violence," in force July 1, 1905 [Cahill's St. ch. 38, ¶¶ 537-542]. At the close of her case there was a directed verdict for the defendant, judgment was entered on the verdict and this writ of error followed.

The declaration was in two counts in each of which it was alleged that plaintiff's son, John W. Simpson, was lynched by a mob in the City of Chicago; that she was dependent upon him for her support and damages were claimed by virtue of the Act of July 1, 1905. A general demurrer was sustained to this declaration, plaintiff elected to stand by her demurrer, the suit was dismissed at her costs and she sued out a writ of error from this court, where, upon consideration, another division of this court held that the declaration stated a good cause of action and that the demurrer should have been overruled. Accordingly the judgment was reversed and the cause remanded. *Barnes v. City of Chicago*, 225 Ill. App. 31. Upon the redocketing of the case in the trial court, the defendant's demurrer was overruled in accordance with the decision of this court and it filed a plea of the general issue. The case went to trial and at the close of the plaintiff's evidence there was a directed verdict for the defendant.

Plaintiff's evidence tended to show that about six o'clock on the evening of July 28, 1919, a mob consisting of probably more than 100 people was assembled near Wabash avenue and 31st street in Chicago; that they were chasing one or more men east in 31st street and there was considerable shooting; that the deceased, John W. Simpson, a police officer of the City of Chicago, arrived on the scene about that time and endeavored to stop the mob and in the rioting he was shot as a result of which he died; that he left him surviving his mother, the plaintiff, who was dependent upon him for her support.

We think the evidence tended to show that there was a mob within the meaning of the Act and that it was assembled for the unlawful purpose mentioned in the Act, but we are of the opinion that the evidence showed that the deceased, Simpson, was not "lynched" by the mob and since section 5 of the Act [Cahill's St. ch. 38, ¶ 541] limited recovery to the dependents of persons "lynched" by a mob, there could be no recovery and, therefore, a directed verdict was proper.   Section 5 specifically provides that where a surviving heir is "dependent for support upon any other person who shall hereafter suffer death by lynching at the hands of a mob" such heir may recover damages from the city in which such lynching occurs in a sum not exceeding $5,000.   "The word 'lynching' has been defined by legal as well as other lexicographers, and according to such definitions, and as the term is generally understood, the illegal act commonly termed 'lynching,' as defined by Rapalje & Lawrence is 'mob vengeance upon a person suspected of crime.'   Law Dictionary, 778.   It is 'a term descriptive of the action of unofficial persons, organized bands, or mobs, who seize persons charged with or suspected of crimes, or take them out of the custody of the law, and inflict summary punishment on them, without legal trial, and without warrant or authority of law.'   Black's Law Dictionary, p. 737.   'A common phrase used to express the vengeance of a mob inflicting injury and committing an outrage upon a person suspected of some crime.'   *State v. Aler,* 39 W. Va. 558."   *State v. Lewis,* 142 N. C. 626.

In the instant case there is no evidence nor is there any intimation that Simpson had committed or was suspected of having committed an offense.   He was a police officer and at the time was discharging his official duties and it cannot be said within any meaning of the term that he was "lynched" by the mob.   It might well be that the law should cover such a case, but that is a question for the legislature and not for

the courts.   The legislature has seen fit to limit the liability of the city to the dependent heirs of such persons as are "lynched" by a mob.

All that was decided on the former hearing in this court was that since each of the two counts of the declaration charged that Simpson was lynched by a mob, it stated a cause of action.   When, however, the case went to trial, the evidence disclosed that Simpson was not lynched, there could, therefore, be no recovery and the directed verdict was proper.

The judgment of the circuit court of Cook county is affirmed.

*Affirmed.*

THOMSON and TAYLOR, JJ., concur.