(No. 16935.—Judgment affirmed.)
MAGGIE BARNES, Appellant, *vs.* THE CITY OF CHICAGO, Appellee.

*Opinion filed October 28, 1926.*

1. WORDS AND PHRASES—*what is "lynching."* The term "lynching" has no technical legal meaning but is a term of common understanding descriptive of the action of unofficial persons, organized bands or mobs, who seize persons charged with or suspected of crime or take them out of the custody of the law and inflict summary punishment on them without legal trial and without warrant or authority of law, and the common understanding of the term involves a charge or suspicion of crime committed by the person so punished.

2. STATUTES—*words will be interpreted in accordance with ordinary meaning.* The legislative intent necessarily must be gathered from the words used, and as a general rule the words of a statute will be interpreted according to their common and popular acceptation and import unless that interpretation will defeat the manifest intent of the General Assembly.

3. INJURIES—*section 5 of the act of 1905 allowing action for wrongful death by lynching does not apply to death of police offi-*

*cer in discharge of duty.* Section 5 of the act of 1905 to suppress mob violence, allowing a dependent an action against a county or city for the wrongful death of a person by lynching at the hands of a mob, cannot be applied to allow an action for the death of a police officer who was shot while endeavoring to stop a mob which was pursuing another person, as the statute allows the action only for death "by lynching," which in its ordinary meaning implies that the deceased was charged with or suspected of crime at the time of his death at the hands of the mob.

APPEAL from the Third Division of the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. FRANK J. STRANSKY, Judge, presiding.

E. H. MORRIS, and ALVA L. BATES, for appellant.

FRANCIS X. BUSCH, Corporation Counsel, (CORA B. HIRTZEL, of counsel,) for appellee.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Maggie Barnes, the appellant, brought an action against the city of Chicago, the appellee, in the circuit court of Cook county, for damages, predicated upon section 5 of an act entitled "An act to suppress mob violence," approved May 16, 1905, in force July 1, 1905. (Smith's Stat. 1925, p. 938.) The declaration contained two counts. The first charged that there assembled in the city more than five persons for the unlawful purpose of offering violence to the person and property of anyone supposed to have been guilty of a violation of the law and to exercise correctional and regulative powers by violence and without lawful authority; that the mob, composed of such persons, while so assembled, did with great force and violence lynch, shoot and kill John W. Simpson, plaintiff's son, an unmarried man; that he left surviving the plaintiff, his mother and lineal heir, and that she was dependent upon him for support. In ad-

dition to the allegations concerning the unlawful assemblage, the killing of Simpson by the mob and the plaintiff's dependency upon him, as set forth in the first count, it was alleged in the second that Simpson was a police officer of the city of Chicago; that he received an annual salary of $1500; that he supported his mother, the plaintiff, and that notice of the plaintiff's claim had been given the city as required by statute. The city's demurrer to the declaration was sustained. The plaintiff elected to stand by her declaration and the suit was dismissed at her costs. Upon a writ of error the Second Division of the Appellate Court for the First District held that the declaration stated a cause of action and that the demurrer should have been overruled. Accordingly the judgment was reversed and the cause was remanded. (*Barnes* v. *City of Chicago,* 225 Ill. App. 31.) After the remandment the city filed a plea of the general issue. A jury trial followed, and at the close of the plaintiff's evidence there was a directed verdict for the defendant. Motions for a new trial and in arrest of judgment were made and overruled and judgment was rendered on the verdict. A writ of error was prosecuted from the Appellate Court for the First District and the Third Division of that court affirmed the judgment. (237 Ill. App. 464.) Upon petition the Appellate Court granted a certificate of importance and allowed an appeal to this court.

At about six o'clock in the evening of July 28, 1919, a mob, consisting of a considerable number of persons, was in pursuit of a man who was running east in Thirty-first street, between State street and Wabash avenue, in the city of Chicago. John W. Simpson, a police officer, followed and endeavored to stop the mob. There was much shooting. Simpson was shot in the legs and died as the result of his injuries. He left his mother, the plaintiff, surviving, to whose support, it appears, he contributed from $20 to $65 per month.

Section 5 of the act in question provides: "The surviving spouse, lineal heirs, or adopted children of any such other person or persons, who, before the loss of life, were dependent for support upon any other person who shall hereafter suffer death by lynching at the hands of a mob, in any county or city in this State, may recover from such county or city damages for injury sustained by reason of the loss of life of such person, to a sum not exceeding five thousand dollars."

Death by lynching, it will be observed, is a condition essential to recovery. Unless, therefore, a person is lynched his dependent has no cause of action. The use of the word "lynching" in a statute is sufficient to define the offense, as the term is one of common knowledge. (*State* v. *Lewis*, 142 N. C. 626.) It is a term "descriptive of the action of unofficial persons, organized bands, or mobs, who seize persons charged with or suspected of crimes, or take them out of the custody of the law, and inflict summary punishment on them without legal trial and without warrant or authority of law." (Black's Law Dict.—2d ed.—p. 742; *Kirkland* v. *Allendale County*, 123 S. E. (S. C.) 648.) Lynching is "mob vengeance upon a person suspected of crime." (Rapalje & Lawrence's Law Dict. p. 778.) It is "the action of private individuals, organized bodies of men or disorderly mobs, who without legal authority punish, by hanging or otherwise, real or suspected criminals without trial according to the forms of law." (Anderson's Dict. of Law, p. 642.) "Lynch law" is "a common phrase, used to express the vengeance of a mob inflicting an injury and committing an outrage upon a person suspected of some offense." (Bouvier's Law Dict.—1897 ed.—p. 287; *State* v. *Aler,* 39 W. Va. 549.) "Lynching" has no technical legal meaning and is universally understood to signify the illegal infliction of punishment by a combination of persons for an alleged crime. (38 Corpus Juris, 328.) To "lynch" is

"to inflict punishment upon, especially death, without the forms of law, as when a mob captures and hangs a suspected person." (Webster's New Int. Dict.) It is "to punish by lynch law; punish summarily for a crime or public offense of any kind without authority of law; specifically, to punish with death in this manner." (4 Century Dict.—1895 ed.—p. 3554.)

An essential element of each of these definitions is that the person unlawfully injured or punished was charged with or suspected of some crime. The common understanding of the term "lynching" involves such a charge or suspicion. The general rule is, that the words of a statute will be interpreted according to their common and popular acceptation and import unless that interpretation will defeat the manifest intent of the General Assembly. The legislative intent necessarily must be gathered from the words used. (*Wheeler* v. *Wheeler,* 134 Ill. 522; *Steere* v. *Brownell,* 124 id. 27; *Richmond* v. *Moore,* 107 id. 429; *Stuart* v. *Hamilton,* 66 id. 253.) At the time Simpson was shot he was a police officer of the city of Chicago endeavoring to discharge his duty. Manifestly, he had not committed, nor was he even suspected of, any offense. It cannot, therefore, be said that he suffered death by lynching, and the evidence failed to sustain a cause of action under the statute invoked. Whether a municipality should be made liable in cases such as the present one is a question for the General Assembly and not for the courts. The judicial department is not permitted to extend statutory provisions beyond their plain language and intent.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*